**BANKERS TRUST COMPANY, as Executor of the Will of Harriet Delta Ellis, Deceased, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

United States District Court
S. D. New York.
Nov. 5, 1959.

Sullivan, Donovan, Hanrahan, McGovern & Lane, New York City, for plaintiff.

S. Hazard Gillespie, Jr., U. S. Atty., for Southern Dist. of New York, New York City.

Myron J. Wiess, Asst. U. S. Atty., Monticello, N. Y., of counsel, for defendant.

RYAN, Chief Judge.

Plaintiff and defendant have moved for summary judgment on the first count pleaded in the complaint wherein plaintiff seeks to recover $13,968.20, on the ground that it represents an illegal and excessive estate tax levied and collected of the plaintiff Executor.

We are not concerned with the second count of the complaint, which seeks recovery of the sum of $1,951.23 illegally levied and collected as additional estate tax of this same plaintiff Executor, for it is conceded that there is no valid defense to this claim.

None of the material facts appear to be in dispute.

Decedent, at the time of her death on April 23, 1953, owned, besides other properties of substantial value, the following United States Treasury Bonds:

| Bonds | | | | Redemption and Par Value | |
|---|---|---|---|---|---|
| U.S.A. Treasury Bonds 2½'s | | | | 6/15/1969–64 | $ 10,000.00 |
| " " " " | | | | 12/15/1969–64 | 15,000.00 |
| " " " " | | | | 3/15/1970–65 | 150,000.00 |
| " " " " | | | | /1971–66 | 100,000.00 |
| " " " "B" 2¾ | | | | 4/ 1/1980–75 | 200,000.00 |
| | | | | | $475,000.00 |

All of the bonds were of issue which could have been applied at par in payment of Federal estate taxes amounting to $1,937,886.74, which are conceded by the plaintiff Executor to have been payable by the estate. The plaintiff did in fact so apply at par value the two $100,000 2¾% Treasury Bonds, Series B–1980–75 on account of the estate tax due and payable; it might have availed itself of the same right and similarly applied the remaining $275,000 of Treasury Bonds owned by the decedent. It did not choose to do so.

The bonds, at the date of decedent's death, had a current market quotation totaling $448,034.38, which plaintiff Executor claims should have been the value ascribed to them for Federal estate tax purposes. However, pursuant to Revenue Ruling 156, 1953–2 Cumulative Bulletin 422, the Executor valued the bonds at par in the estate tax return. A claim for refund seeking the lower valuation was timely filed and rejected by the Director of Internal Revenue and this suit followed.

By valuing the bonds at par rather than market value, their taxable value was increased by $26,965.62. This resulted in the collection of estate taxes increased by $13,968.20, which is the subject of the first claim in this suit.

The only question presented for decision is whether, in valuing the decedent's estate for Federal estate tax purposes, these United States Treasury Bonds, which could have been applied at par by the Executor in payment of Federal estate tax due, were properly valued at their par value, or whether they should have been valued, as plaintiff claims, at their then current market quotation.

We feel that plaintiff's position must be sustained. The serious task of valuing estate assets for tax purposes cannot be determined by such chance events as the size of the estate or volume of Treasury securities among the assets. The treasury regulations themselves provide that "the value of every item of property includible in the gross estate is the *fair market value* thereof at the time of the decedent's death * * *"

Treasury Reg. 105, Sec. 81.10, 7 C.F.R. 1429. In the same regulation, under the heading "Stocks and Bonds", the value is described as the "fair market value per share or bond on the applicable valuation date".

Despite these clear regulations, the Government asserts that the chance which occurred in this estate, that the bonds *could* have been redeemed at par in payment of Federal estate taxes, changed the rule which is applicable to all other estate assets. Nothing, however, in the Internal Revenue Code, nor in the Regulations issued by the Treasury Department, makes it mandatory to redeem the bonds by paying estate taxes with them.

The very ruling on which the Government relies, which, of course, does not have the standing of law, points to the anomalous results which would be inevitable if the Government's theory were upheld. That ruling provides that to the extent marketable Treasury securities owned by a decedent may be applied at par in payment of Federal estate taxes, par (or market value, if higher) constitutes the value for inclusion in the gross estate; as to bonds in excess of those which could be used at par for estate taxes, the market price is their value. In other words, two identical bonds would have two different values for inclusion in the gross estate, dependent upon the accident of the amount of the estate tax payable. Indeed, two decedents dying on the same date, with identical assets, would have different values ascribed to them by the Government if perchance one estate was subject to a marital deduction and thus paid a lower tax than the other. We certainly do not consider that either Congress or the Treasury Department intended such confusion to be injected into the already complex area of gross estate valuation.

The Government's reliance on Estate of Mary Gowdy v. Commission, 1953, 21 T.C. 219 affirmed sub. nom. Collins v. Commissioner, 1 Cir., 1954, 216 F.2d 519 is misplaced. There the courts dealt with the valuation of United States Treasury Bonds, Series G., a non-marketable and non-assignable security. Series G bonds are, by their terms, redeemable at par on the death of the owner, no matter what the size of the estate or the amount of the tax. Accordingly, the courts in Collins considered the fact that there was no "fair market value" for G bonds in determining their estate value to be par.[1] Additionally, every Series G bond automatically becomes worth par upon its owner's death; on the other hand, the marketable Treasury bonds involved in this suit could not, even under the Government's thesis, be said to be worth par until and unless an estate tax is found to be due and owing on their deceased owner's estate, which may be some considerable time after date of death.

The logical application of Treasury Department Regulations entitles plaintiff to value the bonds in question at their market value on the date of decedent's death. The fact that the estate may realize a capital gain by redeeming the bonds at par in payment of federal estate taxes cannot operate to change their date of death value for inclusion in the gross estate. The date of death value is the fair market value on such date, which is established by the price at which these securities were freely traded by willing sellers and willing purchasers who, of necessity, considered all valuation factors including the limited redeemability at par for estate taxes.

Plaintiff's motion for summary judgment is granted on each count in the complaint; defendant's motion for summary judgment on the first count is denied.

On the settlement of the orders hereon, the Court will consider the suggestions of counsel on the prayer for relief la-

1. While not determinative, the Government points out that this plaintiff recognized the validity of the Collins rule by valuing some $650,000 of G bonds at par in the gross estate. We agree that this is the correct procedure.

belled "(d)" in the complaint, concerning reduction in the estate tax by the expense to the estate for attorneys' fees in this suit. Settle orders on notice.