[S. F. No. 21566.   In Bank.   Feb. 11, 1965.]

Estate of GRACE L. ROSENFELD, Deceased.   ALAN CRANSTON, as State Controller, Petitioner and Appellant, v. WELLS FARGO BANK, as Executor, etc., Objector and Respondent.

Charles J. Barry, Milton D. Harris and Edgar Sanderson for Petitioner and Appellant.

Heller, Ehrman, White & McAuliffe, Robert J. White, Julian N. Stern, Michael M. Golden and Lawrence C. Baker for Objector and Respondent.

McCOMB, J.—The State Controller has appealed from an order upholding the executor's objections to the valuation placed upon United States treasury bonds by the California inheritance tax appraiser.

*Facts:* The decedent owned United States treasury bonds with a total par value of $2,200,000. On the date of her death, these bonds were worth in the over-the-counter market $1,872,185.63.

The federal government, through the Internal Revenue Code or by the terms of the bonds, permits their value to be accelerated to par value by the death of the owner to the extent that the bonds are used to pay federal estate taxes. All the bonds were used by the executor for this purpose.

The California inheritance tax appraiser appraised the bonds at their par value, and the executor filed an objection, claiming that the over-the-counter figure was the correct valuation.

Question: *Should United States treasury bonds that are redeemable at par value by an executor in payment of federal estate taxes be appraised, for the purpose of determining the California inheritance tax, at par value or at the price quoted in the over-the-counter bond market on the date of the decedent's death?*

For the purposes of the inheritance tax imposed by California, bonds of this type should be appraised at par value to the extent they can be used to pay federal estate taxes. (*Bankers Trust Co. v. United States,* 284 F.2d 537, 538, cert. denied, 366 U.S. 903 [81 S.Ct. 1047, 6 L.Ed.2d 204]; *In re Behm's Estate,* 19 App.Div.2d 234 [241 N.Y.S.2d 264, 266].)

Section 13951 of the Revenue and Taxation Code requires that property subject to the inheritance tax be appraised at its market value as of the date of death; and regulations prescribed by the State Controller provide that in the case of stocks or bonds which have a market on a stock exchange,

in an over-the-counter market, or otherwise, the market value per share or bond will be deemed to be the mean between the highest and lowest quoted selling prices on the date of the transferor's death, or if actual sales are not available during a reasonable period beginning before, and ending after, the date of death, the mean between the bona fide bid and asked prices on such date. (Cal. Admin. Code, tit. 18, § 13951(e).)

The regulations further provide, however: "In any case in which it is established that the value per share or bond on the basis of selling or bid and asked prices does not reflect the market value of a security, other relevant facts and elements of value will also be considered in determining its market value." (Cal. Admin. Code, tit. 18, § 13951(f).)

It is common knowledge that one of the chief reasons for the purchase of the type of bond here involved is the advantageous marketability at the death of the holder, the United States Government having created an additional market for the bonds in which the estate of the holder is assured of an opportunity to obtain par value to the extent there is federal estate tax liability that may be extinguished by their surrender.

To some extent, this advantageous marketability is reflected in the over-the-counter market quotations; but, as pointed out in the *Bankers Trust Co.* case, *supra,* 284 F.2d 537, 538, sales in the open market do not reflect the full value of such bonds in the estate of a holder whose death has made them redeemable at par value if they are used to extinguish federal estate tax liability. This fact constitutes a "relevant fact and element of value" which must be considered in determining the market value of the bonds.

The regulations prohibit a consideration of depreciation or appreciation in value subsequent to the date of death. (Cal. Admin. Code, tit. 18, § 13951(a).) However, a valuation of such bonds at par value to the extent they can be used to pay federal estate taxes does not take into account an appreciation occurring after the date of death, since the right to use the bonds for the payment of federal estate taxes arises at the time of death, and the tax is calculated as of the same time.

Where a right to a benefit becomes fixed as of the date of death but the amount thereof cannot be determined until a later date, to ignore the amount of the benefit as it later develops would necessarily be to ignore the existence of the right on the date of death.

Since the federal estate tax cannot ordinarily be computed at the time of death, it is generally unknown at that time how

many of the bonds will be redeemable at par value; but when the determination is subsequently made, it relates back to the time of death. (Cf. *Estate of Parrott,* 199 Cal. 107, 112 [5] [248 P. 248] ; *Estate of Slack,* 86 Cal.App.2d 49, 56-57 [194 P.2d 61].)

It is contended that *Bankers Trust Co.* v. *United States, supra,* 284 F.2d 537, and *In re Behm's Estate, supra,* 19 App. Div.2d 234 [241 N.Y.S.2d 264], are inapplicable here, since they involve estate taxes levied on the privilege of transmitting property at death, whereas the California inheritance tax is levied on the privilege of the heirs or legatees to receive property from the decedent after his death.

This argument, however, overlooks the fact that any increase in the value of the estate which will result if the bonds are used to pay federal estate taxes will inevitably be reflected in the amounts received by some or all of the legatees.

Accordingly, as hereinabove pointed out, the right of the executor to use the bonds for the extinguishment of federal estate taxes, and hence receive par value in the additional market created for them by the United States Government as a result of the decedent's death, is one of the ''relevant facts and elements of value as of the date of the transferor's death'' which must be considered in determining their market value.

The order is reversed.

Traynor, C. J., Peters, J., Tobriner, J., Peek, J., Mosk, J., and Burke, J., concurred.