THE SECOND NATIONAL BANK OF RICHMOND, EXECUTOR OF THE ESTATE OF RUTH W. CLARK, DECEASED *v.* STATE OF INDIANA, INDIANA DEPARTMENT OF STATE REVENUE, INHERITANCE TAX DIVISION

[No. 1-477A72. Filed August 31, 1977.]

*William H. Reller, Reller, Mendenhall, Kleinknecht & Milligan,* of Richmond, for appellant.

*Theodore L. Sendak,* Attorney General, *Charles D. Rodgers,* Deputy Attorney General, for appellee.

LYBROOK, J. — The Second National Bank of Richmond (Bank), defendant-appellant, brings this appeal following the trial court's ruling in favor of the Indiana Department of State Revenue (State), plaintiff-appellee.

The facts most relevant to this appeal indicate that Bank was the Executor of the Estate of Ruth W. Clark. Among the assets in that estate were certain United States Treasury Bonds bearing a 3½% rate of interest and scheduled to mature on November 15, 1998. These bonds, commonly known as "Flower Bonds", may be redeemed at face value in payment of Federal Estate Taxes. At

the time of Clark's death the bonds were trading in the over-the-counter bond market and possessed a market value of $151,687.50. The face value of the bonds, and their worth in payment of Federal Estate Taxes, was $200,000. The State contended, and the trial court held, that the bonds should be valued at their redemption value, $200,000 for purposes of the Indiana Inheritance and Estate Tax.

On the above facts, Bank presents the lone issue for our review:

"(1) Is the "fair market value" of the bonds in question to be determined by the open market quotation or by its value for a limited purpose (paying Federal Estate Taxes)?

I.

This appears to be a case of first impression in Indiana. The initial guidance for determining the proper result in the matter must come from legislative enactments. The basis for valuing an estate in Indiana is found in IC 1971, 6-4-1-7 (Burns Code Ed.) which reads in pertinent part:

". . . and shall set out the fair market value of each and every item of property at the time of decedent's death; . . ."

Further guidance can be obtained by reviewing the rules and regulations promulgated by the Department of Revenue. More specifically, Burns Admn. Rules and Regs., IC 1971, (6-4-1-7)-6 deals with the proper method for valuing stocks and bonds in an estate. It reads as follows:

"(6-4-1-7)-6. Fair market value of stocks and bonds, methods of determining.— The fair market value of stocks and bonds which are actively traded *shall* be determined as follows:

A.  If there is a market for stocks or bonds, on a stock exchange, in an over-the-counter market, or otherwise, the mean between the highest and lowest quoted selling prices on the valuation date is the fair market value per share or bond. If there were no sales on the valuation date, but there were sales within a reasonable period before and after the valuation date, the fair market value is determined by taking a weighted average of the mean between the highest and lowest sales on

the nearest date before and the nearest date after the valuation date. The average is to be weighted inversely by the respective number of trading days between the selling date and the valuation date. For example, assume that sales of stock nearest the valuation date (Friday, September 15) occurred two [2] trading days before (Wednesday, September 13) and three [3] trading days after (Wednesday, September 20) and that on these days the mean sale prices per share were $20.00 and $25.00, respectively. The fair market value of the share on the valuation date would be $22.00. As a further example, assume that the decedent died on Sunday, June 7, and that Saturday and Sunday were not trading days. If sales of stock occurred on Friday, June 5, at a mean sale price of $20.00 per share and on Monday, June 8, at a mean sale price of $23.00 per share, then the fair market value of the share on the valuation date, Saturday June 6, would be $21.50.

B.  If the provisions of paragraph A, next preceding, are inapplicable because actual sales are not available during a reasonable period beginning before and ending after the valuation date, the fair market value may be determined by taking the mean between the bona fide bid and asked prices on the valuation date, or if none, by taking a weighted average of the means between the bona fide bid and asked prices on the nearest trading date before and the nearest trading date after the valuation date, of both such nearest dates or within a reasonable period. The weighted average is to be determined in the manner described in paragraph A, next preceding. [Revenue Board, Inheritance Tax, Reg. 1, § 1.7, adopted June 26, 1970, Filed Sept. 12, 1970.]" (Emphasis added.)

It thus becomes apparent that this court must determine the test to be applied in gauging a bond's fair market value as it will be valued for inheritance tax purposes.

With the above basic guidelines in mind, we next consider the precedents established in other jurisdictions which have been faced with analogous situations.

A review of those cases lead this court to the conclusion that the judgment of the trial court must be reversed and the bonds must be valued at the fair market value for inheritance tax purposes. We find the logic expressed in *In Re Estate of Voss* (1973), 55 Ill.2d 313, 303 N.E.2d 9, to be persuasive in this matter. See also, *In Re Estate of Barker* (1975), 24 Ill. App.3rd 959, 321 N.E.2d

709; and *In Re Estate of Power* (1970), 156 Mont. 100, 476 P.2d 506. The *Voss, supra,* court held and we must agree, that when the legislature enacted a statute specifying fair market value it was not referring to special or limited value which a particular asset may have for a particular executor with a captive buyer (the Federal Government) and only then for a special purpose (limited only to payment of Federal Estate taxes). The plain meaning of the words "fair market value" must be employed when interpreting the statute. The commonly accepted definition of "fair market value" is what a willing buyer, under no compulsion to buy, would pay a willing seller, under no compulsion to sell, for the item. The U.S. Treasury is under a compulsion to accept the "Flower Bonds" at par value and therefore does not come withn the definition of a "willing buyer."

The method of determining fair market value was very specifically outlined by the State in the above regulation, and we therefore find that the method in the regulation must be used to determine "fair market value." We therefore hold that all bonds held in the estate must be valued at the price determined in the open market and not at par. The plain language of the statute requires this.

Reversed and remanded for further action not inconsistent with this opinion.

Reversed.

Robertson, C.J. and Lowdermilk, J., concur.

NOTE—Reported at 366 N.E.2d 694.